UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JEFF BUEHLMAN, on behalf of himself
and all others similarly situated,

               Plaintiff,

    -vs-

IDE PONTIAC, INC. and ANN IDE,
individually,

               Defendants.

**DECISION and ORDER
No. 6:15-cv-6745(MAT)**

---

## INTRODUCTION

Represented by counsel, Jeff Buehlman ("Buehlman" or "Plaintiff") commenced this action on December 14, 2015, against Ide Pontiac, Inc. ("Ide"), and Anne[1] Ide ("Anne Ide") (collectively, "Defendants"), asserting causes of action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the New York State Labor Law ("NYLL"), § 190 et seq. Plaintiff seeks, on behalf of himself and all similarly situated individuals, unpaid overtime compensation from Defendants under Section 207(a)(1) of the FLSA, 29 U.S.C. § 207(a)(1). Plaintiff, individually, seeks unpaid overtime and spread-of-hours compensation under NYLL § 198(3) and Title 12 of New York's Compilation of Codes, Rules and

---

[1]

    Defendants indicate that Anne Ide's first name was incorrectly spelled as "Ann" in the caption. The Clerk of Court is directed to amend the caption so that her first name is spelled, "Anne."

Regulations ("NYCRR") §§ 142-2.4 and 142-2.18.

Presently pending before the Court are Defendants' Motion for Summary Judgment (Dkt 15), Plaintiff's Cross-Motion for Summary Judgment (Dkt 18), and Plaintiff's Motion to Strike (Dkt 21). For the reasons discussed below, Defendants' Motion for Summary Judgment is denied in part and granted in part, Plaintiff's Cross-Motion for Summary Judgment is denied, and Plaintiff's Motion to Strike is denied.

## FACTUAL BACKGROUND

Ide is a New York corporation with principal offices in the County of Monroe, State of New York. Ide owns and operates automobile dealerships in the Western District of New York, including the one at which Plaintiff was employed as a "partsman." Plaintiff was paid an hourly rate for each hour that he worked. He received the same hourly rate for each hour worked in the workweek, including any hours worked in excess of 40 hours. Plaintiff's regular hourly rate was $14 per hour during the period between January 1, 2010, and August 19, 2015, the date that his employment with Ide was terminated.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

A fact is deemed "material" for these purposes "if it might affect the outcome of the suit under the governing law." Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001) (citation omitted). A factual issue is "genuine" if "a reasonable jury" could find in favor of the nonmoving party based on that fact. Id. (citation omitted). The initial burden of establishing the absence of any genuine issue of material fact falls on the movant; after that, the burden shifts to the nonmovant to establish the existence of a factual question requiring resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). At the summary judgment stage, "courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion." Scott v. Harris, 550 U.S. 372, 378 (2007) (quotation and citation omitted).

**DISCUSSION**

**I.   Plaintiff's Overtime Claim**

**A.   General Legal Principles**

The FLSA requires that an employee who works more than forty hours in a workweek must "receive[ ] compensation for his employment in excess of [forty] hours . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The FLSA's broad civil enforcement scheme mandates that "[a]ny employer who violates the provisions of . . . section 207 of this title shall be liable to the employee or

employees affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Under Section 13(b)(10) of the FLSA, Section 207's overtime requirements do not apply to "any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles . . . if he is employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers." 29 U.S.C. § 213(b)(10)(A) ("the Partsman Exemption").

The NYLL does not itself require the payment of "overtime." Johnson v. Wave Comm GR LLC, 4 F. Supp.3d 423, 433-34 (N.D.N.Y. 2014) (citation omitted). However, pursuant to the authority granted to it in NYLL § 655(5)(b) to recommend regulations governing overtime or part-time rates, the New York State Department of Labor ("NYDOL") promulgated 12 NYCRR § 142-2.2, which provides that See [a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 U.S.C. 201 et seq., the Fair Labor Standards Act of 1938, as amended." 12 N.Y. COMP. R. & REGS. § 142-2.2. New York also has adopted a number of the exemptions set forth under Section 13 of the FLSA, including the Partsman Exemption.

"[B]ecause the FLSA is a remedial act, its exemptions . . .

are to be narrowly construed." <u>Martin v. Malcolm Pirnie</u>, Inc., 949 F.2d 611, 614 (2d Cir. 1991). "The employer who invokes [an] exemption bears the burden of establishing that the employee falls within the exemption." <u>Mullins v. City of N.Y.</u>, 653 F.3d 104, 113 (2d Cir. 2011) (citation omitted). "The exemption question" under the FLSA "is a mixed question of law and fact." <u>Myers v. Hertz Corp.</u>, 624 F.3d 537, 548 (2d Cir. 2010) (citation omitted). "The question of how the [employees] spent their working time . . . is a question of fact. The question whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law. . . ." <u>Icicle Seafoods, Inc. v. Worthington</u>, 475 U.S. 709, 714 (1986).

### B.   The Partsman Exemption

The Partsman Exemption excludes from the FLSA overtime payment requirement "[1] any salesman, partsman, or mechanic [2] primarily engaged in selling or servicing automobiles, trucks, or farm implements [("Enumerated Vehicles"), if he is employed by [3] a nonmanufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers[.]" 29 U.S.C. § 213(b)(10)(A). The Partsman Exemption thus has three requirements, which are discussed in turn below.

### 1.   Does Plaintiff Fall Within the Regulatory Definition of "Partsman"?

The applicable regulation promulgated pursuant to the FLSA defines "partsman" as "any employee employed for the purpose of and

primarily engaged in requisitioning, stocking, and dispensing parts." 29 C.F.R. § 779.372(c)(2). Section 779.372(c)(2) of Title 29 C.F.R. does not contain a definition of "primarily engaged."

Plaintiff's former supervisor, Mark Lopresti ("Lopresti"), states that Plaintiff was "employed as a Partsman and worked almost exclusively at the Parts Desk[,]" a service window located in Ide's service center, which "houses shelves of automotive parts." (See Declaration of Mark Lopresti ("Lopresti Decl.") (Dkt 15-3) ¶ 5). According to Lopresti, approximately 70 percent of Plaintiff's job duties consisted of "ordering, stocking, organizing and dispensing parts for mechanics to use in the course of servicing vehicles at the Dealership." (Id. ¶ 6). Likewise, Plaintiff states in his Complaint that his employment "consisted primarily of selling automotive parts directly to members of the public, and associated duties such as stocking, organizing, etc." (Complaint ("Compl.") (Dkt 1) ¶ 26). The parties, in short, agree that Plaintiff was a "partsman" as defined in 29 C.F.R. § 779.372(c)(2). (See Plaintiffs Memorandum of Law in Opposition ("Pl's Opp.") (Dkt 18) at 6).

### 2. Was Plaintiff Primarily Engaged in Selling or Servicing Vehicles?

Classifying Plaintiff as a partsman, however, does not end the Court's inquiry, because the Partsman Exemption applies only to partsmen "*primarily engaged* in *selling or servicing* automobiles, trucks, or farm implements[.]" 29 U.S.C. § 213(b)(10)(A) (emphases

supplied). The applicable regulation provides that "*[a]s used in section 13(b)(10)*, primarily engaged means the major part or over 50 percent of the salesman's, partsman's, or mechanic's time must be spent *in selling or servicing* the enumerated vehicles." 29 C.F.R. § 779.372(d) (emphases supplied). As noted above, the phrase "primarily engaged" is not defined in the definition of "partsman" in 29 C.F.R. § 779.372(c)(2), and Section 779.372(d) appears to limit its definition of "primarily engaged" to 29 U.S.C. § 213(b)(10)(A), FLSA § 13(b)(10)(A).

The parties dispute whether Plaintiff spent "over 50 percent of . . . [his] time . . . in selling or servicing the enumerated vehicles." 29 C.F.R. § 779.372(d). Plaintiff argues that since the parties agree that he spent more than 50 percent of his time "requisitioning, stocking, and dispensing parts," 29 C.F.R. § 779.372(c)(2), for purposes of the regulatory definition of partsman in 29 C.F.R. § 779.372(c)(2), he logically could not have also spent "over 50 percent of . . . [his] time . . . in selling or servicing," 29 C.F.R. § 779.372(d), automobiles or trucks. Therefore, Plaintiff argues, Plaintiff does not meet the second criterion of the Partsman Exemption. Defendants agree that by definition an employee who qualifies as a "partsman" must be primarily engaged in requisitioning, stocking, and dispensing parts, and therefore he cannot also be primarily engaged in the manual servicing of vehicles. Defendants argue, however, that to

"read into the partsman exemption a requirement to 'actually work on vehicles' is to make the partsman exemption superfluous." Defendants' Memorandum of Law in Support ("Defs' Mem.") (Dkt 15-1) at 10. According to Defendants, the "more reasonable interpretation of Section 13(b)(10)'s requirement that exempt partsmen be primarily engaged in the servicing of vehicles is that an employee who meets the definition of a 'partsman' *is* primarily engaged in servicing vehicles by the very nature of his duties[,]" id. (emphasis in original), which here included "work[ing] in concert [with mechanics] to service vehicles" by retrieving parts for them. Id.

Defendants acknowledge that there is a dearth of caselaw analyzing the Partsman Exemption. Plaintiff relies on McBeth v. Gabrielli Truck Sales, Ltd., 768 F. Supp.2d 383 (E.D.N.Y. 2010), which Defendants concede is directly on point. Defendants argue, however, that McBeth was incorrectly decided. As discussed below, the Court is not persuaded by Defendants' argument.

In McBeth, the district concluded that the two plaintiffs-employees, who worked for a truck dealership, were both "partsmen" as defined in 29 C.F.R. § 779.372(c)(2), and in fact, the plaintiffs-employees performed duties almost identical to those performed by Plaintiff. Compare McBeth, 768 F. Supp.2d at 388 (plaintiff McBeth identified, located and made truck parts available for on-site mechanics and outside customers while working

for dealership that sold and serviced trucks; plaintiff Cascone drove trucks delivering parts for same dealership; both met statutory definition of "partsmen" under FLSA); with Jeff Buehlman Declaration ("Buehlman Decl.") (Dkt 18-2) ¶¶ 8-10 (stating that he retrieved parts at the mechanics' or customers' requests and dispensed them, unloaded parts and supplies from trucks, ran errands to other company locations, packed up and shipped return items to Honda, and performed "minor janitorial duties if asked").

Nonetheless, the district court in McBeth concluded that the plaintiffs did not fall within the Partsmen Exemption, which applies only to partsmen "primarily engaged in selling or servicing," 29 U.S.C. § 213(b)(10)(A) (emphasis supplied), statutorily enumerated vehicles. As to the "selling" aspect of the Partsman Exemption, it was undisputed that the plaintiffs never made any sales of trucks to customers and never were involved directly in the sale of a truck to a customer; rather, they "dealt only with parts." McBeth, 768 F. Supp.2d at 388. Therefore, the district court concluded, the plaintiffs could not be characterized as partsmen "primarily engaged in selling" trucks. Id. Likewise, in the present case, Buehlman's supervisor avers that his "job duties did not include selling automobiles," and that Buehlman "rarely entered the showroom during his worktime." (Lopresti Decl. ¶ 11). Therefore, the Court finds, Buehlman cannot be characterized as a partsman "primarily engaged in selling" automobiles at Ide.

As to whether the plaintiffs in McBeth were "primarily engaged in servicing" trucks, this presented "a closer question[,]" 768 F. Supp.2d at 388, since the plaintiffs were, "in some broad sense, involved in the Gabrielli service operation[,]" given that "their work was important to the mechanics' servicing duties." Id. This Court notes, however, that the FLSA uses the word "servicing" to describe the particular activity of exempt employees. The "first, or primary, meaning"[2] of the transitive verb "to service" is "to perform services for: as [1]: to repair or provide maintenance for . . . ." Webster's New Collegiate Dictionary 1051 (1973 ed.); see also American Heritage Dictionary (Online), http://www.yourdictionary.com/service#americanheritage (*transitive verb* serviced, servicing, services 1. To make fit for use; adjust, repair, or maintain: service a car). To define servicing to include being "involved in" or "integral to" the "service process" or the "process of servicing" cars and trucks would read words into the statute; however, the FLSA uses one word, "servicing," to describe the particular work activity of exempt employees, without adding any form of the word "process." Viewing Buehlman's job duties—which are uncontested—in comparison with the first, or primary meaning, of servicing, it is apparent that he was not "servicing" vehicles

---

2

See Muscarello v. United States, 524 U.S. 125, 128 (1998) (looking at "first, or primary, meaning" of word "carry" to discern meaning of work "carries" in statute imposing mandatory sentence on person who uses or carries firearm during or in relation to drug trafficking crime).

for purposes of the exemption: Buehlman states that when a mechanic requested a part, he "simply got the part . . . asked for from the shelf and gave it to [the mechanic]," and "utilized absolutely no mechanical or automotive-repair skills" in doing so. (See Buehlman Decl. ¶ 10). Similarly, the plaintiffs in McBeth "did not actually work on vehicles" but instead "filled orders placed by on site service personnel, or by consumers." 768 F. Supp.2d at 388. As the district court in McBeth observed, "the requirement that partsmen be 'primarily engaged' in the 'service' of vehicles suggests that there are partsmen who may not be so engaged[,]" id., such as the plaintiffs in that case and Buehlman here. Therefore, the Court rejects Defendants' argument that unless "servicing" is read expansively, there would be virtually no "partsmen" who fell within the exemption. See McBeth, 768 F. Supp.2d at 388 (rejecting the dealership's argument that "to apply the statutory exemption only to 'partsmen' who actually work on vehicles would be to define these individuals as mechanics, and thereby render the statutory use of the label 'partsmen,' superfluous").

The exemption's legislative history makes "clear that it was the intent of Congress to exempt from overtime compensation those dealership employees who worked irregular and/or seasonal hours and/or were paid on a commission basis." Id. (citing 112 Cong. Rec. 11289 (1966); 112 Cong. Rec. 11290 (1966)). The Ninth Circuit, in Gieg v. Howarth, 244 F.3d 775 (9th Cir. 2001), observed that prior

-11-

to the adoption of the present language in 1966, the FLSA "exempted 'any employee of a retail or service establishment which is primarily engaged in the business of selling automobiles, trucks, or farm implements' from both minimum wage and overtime requirements." Id. (quoting 29 U.S.C. § 213(a)(19) (1964) (emphasis in original)). The Ninth Circuit "presume[d] that in the passage of the 1966 amendments, Congress intended to narrow significantly the reach of the automobile dealership employee exemption." Id. (some internal citations omitted); see also Brennan v. Deel Motors, Inc., 475 F.2d 1095, 1098 (5th Cir. 1973) ("[E]xemptions are 'drawn to meet particular needs.' The enactment of § 13(b)(10) was an implicit recognition by Congress of the incentive method of remuneration for salesmen, partsmen, and mechanics employed by an automobile dealership."). The Court agrees with McBeth that "while the type of work performed" by the plaintiffs "can fall within a broad definition of the term, 'partsmen,' their jobs were not the type of work intended to be exempted from the overtime provision of the FLSA." Id. (citing Brennan, 475 F.2d at 1097-98 (service salesmen were within FLSA exemption; they "receive[d] a substantial part of their remuneration from commissions and therefore [were] more concerned with their total work product than with the hours performed" and their hours might "be irregular depending on the special needs of their customers"); Dayton v. Coral Oldsmobile, 684 F. Supp.290, 292 (S.D. Fl. 1988) (holding partsman paid on a

salary-plus-commission basis to be within FLSA exemption; nature of employee's remuneration "is important in determining whether the job performed was exempt from the FLSA")).

The district court in McBeth noted that while the case was "close," it was "swayed by the facts that [the] [p]laintiffs worked regular hours, and were not paid on a commission basis." 768 F. Supp.2d at 390. Here, Plaintiff avers that he worked regular hours and was not paid on a commission basis. (See Buehlman Decl. ¶ 11 (stating that his schedule was "fixed each week and was tied to the fixed hours that the Parts Department was open" and that he was not paid "by the job, or by the sale" but "was paid only for the hours that [he] worked")). The Human Resources and Payroll Manager at Ide submitted a reply declaration stating that based on her personal review of the records, "Ide also paid Plaintiff commissions based upon the performance of the Parts Department as a whole. Therefore, for each of the years of his employment, Plaintiff received commission payments in addition to his hourly wage of $14 per hour." Reply Declaration of Stacey Giehl (Dkt #20-2) ¶¶ 1-2). Defendants do not quantify these payments, or suggest that Plaintiff "receive[d] a substantial part of [his] remuneration from commissions and therefore [was] more concerned with their total work product than with the hours performed[,]" Brennan, 475 F.2d at 1097-98. The Court does not find that this creates a genuinely disputed issue of fact. Indeed, in McBeth, the district court found

that the fact that the plaintiffs received "some marginal incentive pay" did not affect the court's finding, since "such pay did not constitute the bulk of [their] compensation, or appear to be tied to [their] job performance." <u>McBeth</u>, 768 F. Supp.2d at 390.

### 3.   Is Ide a Nonmanufacturing Establishment Primarily Engaged in the Business of Selling Vehicles?

The regulations provide that "[a]s applied to the establishment, primarily engaged means that over half of the establishments [sic] annual dollar volume of sales made or business done must come from sales of the enumerated vehicles." 29 C.F.R. § 779.372(d). In his opposition memorandum, Plaintiff argued that Defendants failed to demonstrate that Ide is a nonmanufacturing establishment primarily engaged in the business of selling vehicles to ultimate purchasers. Defendants then filed several reply declarations (Dkt #20-1, #20-2, & #20-3) purporting to establish that Ide is a nonmanufacturing establishment primarily engaged in the business of selling vehicles to ultimate purchasers. Defendants state that they did not believe this was a disputed element of the Partsman Exemption and therefore they did not submit argument or evidence on this issue in support of their Motion for Summary Judgment. Plaintiff subsequently filed a Motion to Strike (Dkt #21) Defendants' reply declarations.

Where a motion for summary judgment is improperly supported, a court may grant the moving party an opportunity to provide proper

support. See FED. R. CIV. P. 56(e)(1) ("If a party fails to properly support an assertion of fact . . . as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact. . . or (4) issue any other appropriate order"); see also FED. R. CIV. P. 56(e) advisory committee's note to 2010 amendment (noting that "afford[ing] an opportunity to properly support or address [a] fact" is "in many circumstances. . .the court's preferred first step") (quoted in Soucy v. Nova Guides, Inc., No. 14-CV-01766-MEH, 2015 WL 5535347, at *2 (D. Colo. Sept. 21, 2015)). The Court exercises its discretion to deny Plaintiff's Motion to Strike.

According to the Reply Declaration of Anne Ide ("Ide Reply") (Dkt 20-1), the financial statements for each of the years in question, i.e., 2010 to 2015, show that at least 80 percent of Ide's annual dollar volume of sales made or business done came from vehicle sales. See id. ¶ 3. Plaintiff argues that Defendants submitted no documents in support of this assertion, which is directly relevant to establishing the Partsman Exemption, and therefore failed to carry their burden of proof. See Hunter v. Sprint Corp., 453 F. Supp. 2d 44, 50 (D.D.C. 2006) ("the defendant-employer has the burden of proving that the [FLSA] exemption applies to the plaintiff-employee") (citing Corning Glass Works v. Brennan, 417 U.S. 188, 196–97 & n.12 (1974); other citation omitted)). The Court need not determine this issue,

because the Court has already found that Defendants failed to carry their burden of proof on the second element of the Partsman Exemption. Therefore, even if the Court did find that Ide is a nonmanufacturing establishment "primarily engaged" in the business of selling vehicles, it would have no effect on the outcome of the instant summary judgment motion.

## II. Plaintiff's Spread of Hours Claim

Defendants also seek dismissal of Plaintiff's spread of hours claim under the NYLL. As a matter of New York law, certain employees are entitled to one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required by regulation, for any day in which, inter alia, "the spread of hours" exceeds 10 hours. N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.4(a) ("Section 142-2.4"). The "spread of hours" is defined by regulation as "the interval between the beginning and end of an employee's workday." N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.18.

Plaintiff argues that the Court should adopt the reasoning of Doo Nam Yang v. ACBL Corp., 427 F. Supp.2d 327 (S.D.N.Y. 2005), and the cases that have followed Yang, to find that he is a covered employee under Section 142-2.4. In Yang, the District Court declined to defer to a New York State Department of Labor ("NYDOL") Opinion Letter dated April 12, 2006, interpreting Section 142-2.4. That NYDOL Opinion Letter stated that "the 'spread of hours' regulation does not require all employees to be paid for an

additional hour, but merely that the total wages paid be equal to or greater than the total due for all hours worked at the minimum wage plus one additional hour at the minimum wage." NYDOL Opinion Letter dated 4/12/06 (quoted in Roach v. T.L. Cannon Corp., 889 F. Supp.2d 364, 367 (N.D.N.Y. 2012)). The district court in Yang found that the effect of adopting the NYDOL's interpretation "would be to carve out an exception to the spread of hours provision for workers who are properly paid overtime and make more than the minimum wage. . . ." 427 F. Supp.2d at 339. Noting that it owed no deference to NYDOL when the "question is one of pure legal interpretation of statutory terms[,]" id. at 339, the district court in Yang held that Section 142-2.4 was applicable to all hourly paid employees regardless of whether they earned more than the minimum wage. Yang, 427 F. Supp.2d at 339-40.

Yang and the cases that have followed it "appear to be in the minority." Ramos v. Telgian Corp., No. 14-CV-3422(PKC), 2016 WL 1306531, at *17 (E.D.N.Y. Mar. 31, 2016) (citing Ellis v. Common Wealth Worldwide Chaueffuered [sic] Trans. of NY, LLC, No. 10-CV-1741, 2012 WL 1004848, at *6-*7 (E.D.N.Y. Mar. 23, 2012) (noting that "a majority of the cases since [Doo Nam] Yang have disagreed as to both the holding that the plain language of the statute did not limit its applicability to minimum wage workers and the court's decision not to grant deference to the [NY DOL] opinion letter;" and "finding that the strong weight of authority and the

plain statutory language lead[s] . . . to the conclusion that an employer need only pay spread of hours wages to employees making minimum wage")) (quotation marks and citation omitted). In <u>Ramos</u>, for instance, the district court found that the plain language of Section 142-2.4 "makes clear that the extra hour's pay of minimum wage for more than ten hours of work in one day is 'in addition to the minimum wage required' by the NYLL[,]" <u>Ramos</u>, 2016 WL 1306531, at *17, and therefore "the language of the regulation provides for supplemental spread-of-hours compensation for workers who earn only minimum wage under the NYLL, rather than for those who earn more . . . than the minimum wage." <u>Id.</u>; <u>see also</u>, <u>e.g.</u>, <u>Chan v. Triple 8 Palace, Inc.</u>, No. 03 Civ. 6048(GEL), 2006 WL 851749, at *21 (S.D.N.Y. Mar. 30, 2006) ("The plain text of [Section 142-2.4] ensures an additional wage only 'in addition to the minimum wage' required under New York law. It is therefore to be expected that the provision will not affect workers whose total weekly compensation is already sufficiently above the minimum rate.").

When interpreting a regulation or statute, the Court must endeavor to give meaning to all of its terms. <u>See</u> <u>Smith v. Donovan</u>, 878 N.Y.S.2d 675, 678 (1st Dept. 2009). The regulation's use of the phrase "*in addition to* the minimum wages otherwise required," indicates to this Court that it was intended to apply only to those *already earning* the minimum wage. It is notable that "the regulation is contained in the section of the labor standards

regulations entitled 'Minimum Wage Orders for Miscellaneous Industries and Occupations,' and 'by its own terms is concerned only with ensuring an additional amount above the '*minimum* wage' when certain conditions are met.'" Jenkins v. Hanac, Inc., 493 F. Supp.2d 556, 558 (E.D.N.Y. 2007) (quoting Chan, 2006 WL 851749, at *21 (quoting N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.4(a)); emphasis added in Jenkins). The Court concurs that the regulation "does not ensure additional compensation to employees whose wages sufficiently exceed [the minimum wage] floor." Jenkins, 493 F. Supp.2d at 558 (quoting Espinosa v. Delgado Travel Agency, Inc., No. 05 Civ. 6617, 2007 WL 656271, at *1-2 (S.D.N.Y. Mar. 1, 2007); brackets in original).  On the present record, there is no genuine issue of material fact, and Defendants are entitled to judgment as a matter of law, because Plaintiff's salary sufficiently exceeded the statutory minimum wage required throughout his employment. Therefore, he is not entitled to receive an additional hour at the minimum rate for the days in which his "spread of hours" exceeded ten (10) hours. Jenkins, 493 F. Supp.2d at 558 (citing Espinosa v. Delgado Travel Agency, Inc., No. 05 CIV. 6917(SAS), 2007 WL 1222858, at *2 (S.D.N.Y. Apr. 24, 2007)). Id. Accordingly, Plaintiff's "spread of hours" claim under the NYLL is dismissed.

## III. The Issue of Anne Ide's Liability

Defendants contend that Anne Ide is not an employer for purposes of the FLSA or the NYLL, and therefore Plaintiff

improperly named her as a defendant in this action. Plaintiff
asserts that the issue of Anne Ide's liability is not ripe, because
the parties previously agreed to limit the scope of the summary
judgment motion to the applicability of the Partsman Exemption. See
Affirmation of Robert Mullins, Esq. ("Mullins Aff.") (Dkt #18-3) ¶¶
5-7 ("[C]ounsel conferred in preparation for a Rule 16 conference,
and ultimately agreed that the threshold issue in this case is
whether Plaintiff fell within the overtime exemption . . . .
Counsel also agreed that the exemption issue is a question of law,
that there is no significant disagreement on the facts necessary to
present the issue to the Court, and that the most economical course
would be to resolve this single issue before continuing the
litigation."). Defendants' attorney agrees that during the parties'
discussions concerning whether a summary judgment motion was
premature, the entire focus was on the issue of Plaintiff's duties.
After Defendant's attorney advised Plaintiff's counsel that
Defendants would not contend that Plaintiff actually sold or
serviced vehicles, Plaintiff's counsel agreed that it would not be
necessary to prepare a set of stipulated facts and that Defendants
could proceed with a motion for summary judgment. See Reply
Declaration of Jeffrey J. Calabrese, Esq. ("Calabrese Reply") (Dkt
#20-3) ¶¶ 2-3. However, Defendants' attorney states, he never
intended in their conversations to agree that Defendants' motion
for summary judgment was limited to only one of the causes of

action against one of the defendants. See id. ¶ 3.

In interpreting the definition of "employer" for purposes of the FLSA, the Second Circuit has applied an "economic realities test" to determine whether an individual should be held liable for violations of the respective wage and hour laws. See Irizarry v. Catsimatidis, 722 F.3d 99, 106 (2d Cir. 2013). This test "requires '[a] full inquiry into the true economic reality' of the employment relationship based on a 'particularized inquiry into the facts of each case.'" Frasier v. Gen'l Elec. Co., 930 F.2d 1004, 1008 (2d Cir. 1991) (quoting Carter v. Dutchess Community College, 735 F.2d 8, 13-14 (2d Cir. 1984); brackets in original).  Given that no discovery has occurred, and that the parties dispute some key aspects of Anne Ide's duties and degree of operational control at Ide, the Court finds that a determination of her "employer" status under the FLSA to be premature. See Berrios v. Nicholas Zito Racing Stable, Inc., 849 F. Supp.2d 372, 393 (E.D.N.Y. 2012) ("The question of whether a defendant is an employer under the FLSA is a mixed question of law and fact, with the existence and degree of each relevant factor lending itself to factual determinations. Therefore, individual employer liability is rarely suitable for summary judgment.") (internal and other citations omitted); see also Jin Dong Wang v. LW Rest., Inc., 81 F. Supp.3d 241, 257 (E.D.N.Y. 2015) (denying, after full discovery, summary judgment on defendant's employer status under FLSA; finding that "'the

existence and degree' of [her] power to hire and fire, her level of supervision and control, and her ability to determine the rate and method of payment cannot be determined based on the record before the Court and must be determined by a jury") (citations omitted).

Furthermore, although Defendants here assert that the tests for "employer" status are the same under the FLSA and the NYLL, the Second Circuit "has recently noted that the FLSA and NYLL analyses may differ." Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp.2d 901, 922-23 (S.D.N.Y. 2013) (citing Irizarry, 722 F.3d at 117 ("Plaintiffs assert that the tests for 'employer' status are the same under the FLSA and the NYLL, but this question has not been answered by the New York Court of Appeals."). The New York State law standard for determining whether a worker is an employee or an independent contractor under the NYLL is phrased differently than the FLSA inquiry which, although "substantially similar" to the FLSA, Browning v. Ceva Freight, LLC, 885 F. Supp.2d 590, 599 (E.D.N.Y. 2012), "focuses more on 'the degree of control exercised by the purported employer,' as opposed to the 'economic reality of the situation,'" Hart, 967 F. Supp.2d at 923 (quoting Velu v. Velocity Express, Inc., 666 F. Supp.2d 300, 307 (E.D.N.Y. 2009)). This issue has not been addressed by Defendants.

The attorneys of record sharply dispute whether there was an agreement restricting the scope of the instant summary judgment motion, and, in any event, the record is insufficient to make the

determination of whether Anne Ide is an employer under the FLSA. Moreover, there are unsettled questions of law regarding the standard for determining "employer" status under the NYLL, which the parties have not briefed. For these reasons, the Court will deny without prejudice Defendants' motion for summary judgment as to Plaintiff's FLSA and NYLL claims against Anne Ide.

## CONCLUSION

For the reasons discussed above, Defendants' Motion for Summary Judgment is **granted in part and denied in part.** Specifically, Defendants' Motion for Summary Judgment regarding Plaintiff's FLSA and NYLL overtime claims is **denied** as to Ide Pontiac, Inc.; and is **denied without prejudice with leave to renew** as to Anne Ide. Plaintiff's FLSA and NYLL overtime claims against Ide and Anne Ide therefore remain pending. Defendants' Motion for Summary Judgment regarding Plaintiff's "spread of hours" claim under the NYLL is **granted,** and therefore this claim is **dismissed.** Plaintiff's Motion to Strike is **denied.** Plaintiff's Cross-Motion for Summary Judgment is **denied.**

**SO ORDERED.**

**S/ Michael A. Telesca**
_____
          HON. MICHAEL A. TELESCA
          United States District Judge

Dated:      November 7, 2016
            Rochester, New York.

-23-