UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFF BUEHLMAN, on behalf of himself and all others similarly situated<br><br>　　　　Plaintiffs<br><br>　　　　vs.<br><br>IDE PONTIAC, INC., and ANN IDE, individually<br><br>　　　　Defendants | **MEMORANDUM OF LAW**<br><br>**Index No. 15-cv-6745** |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO EXPAND DEFINITION OF CONDITIONALLY CERTIFIED CLASS**

　　　　　　　　　　　　　　　　　　　　　　　　FERR & MULLIN, P.C.
　　　　　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiffs
　　　　　　　　　　　　　　　　　　　　　　　　7635 Main St. Fishers
　　　　　　　　　　　　　　　　　　　　　　　　P.O. Box 440
　　　　　　　　　　　　　　　　　　　　　　　　Fishers, NY 14453
　　　　　　　　　　　　　　　　　　　　　　　　t (585) 869-0210

## **PRELIMINARY STATEMENT**

This case arises out of Defendants' pay practices that are in violation of the Fair Labor Standards Act ("FLSA"). On June 15, 2017, this Court preliminarily certified the following class of Defendants' employees who work or worked at Defendants' Honda dealership, pursuant to 29 U.S.C. §216(b):

All current and former employees who worked at Ide Honda in its Parts Department since December 14, 2012. Dkt. No. 44.

In doing so, this Court denied Plaintiff's request to include employees in the Parts Departments of all Defendants' locations, and limited the class to the Ide Honda location.

Plaintiff now seeks to have the above class definition amended and expanded to include employees who work or worked at other locations owned and/or operated by Defendants.

Specifically, Plaintiff seeks an Order:

1. Requiring the issuance of an expedited notice as set forth in Exhibit A to the Declaration of Robert Mullin to all current and former hourly employees of Defendants who worked in the Parts Departments at Defendants' automotive dealerships during the period commencing December 14, 2012 through the present;

2. Requiring Defendants to provide Plaintiff's counsel with a list, in both hardcopy and EXCEL formats, with each item of the employee's name, current or last known address, phone number, email address, social security number, identification number(s) assigned by Defendants, location of employment, position or capacity of employment, rates of pay, and dates of employment, of all individuals who meet the above class description, within 15 days of the issuance of the order;

3. Requiring Defendants to post notices and opt-in forms in conspicuous places, such as break rooms, locker rooms, time clocks, or other areas of employee congregation, and at Defendants' locations where employees can see such notices during the pendency of the lawsuit;

4. Granting such other relief as this Court deems just and proper.

## **FACTS**

Plaintiff Jeff Buehlman brought this action against Defendants based upon their practice of requiring employees in their parts department to work in excess of forty hours in a single workweek, but not pay them the legally required overtime premium of at least one and one-half times their regular rate.

Defendants do not deny that they failed to pay Plaintiff and Class Members one and one-half times their regular rate for overtime hours. Rather, they claim that they are not required to do so, pursuant to an exemption found in the Fair Labor Standards Act (the "FLSA"). The specific exemption is found at 29 U.S.C. § 213(b)(10)(A) (the "Exemption"). On May 16, 2016, Defendants moved for summary judgment on this very issue, arguing that the Exemption applied to Plaintiff. Dkt. No. 15. On November 7, 2016, this Court denied Defendants' motion on this exact issue, specifically finding that Plaintiff did not fall within the Exemption. Dkt. No. 25. On May 5, 2017, Plaintiff moved for preliminary class certification, Dkt. No. 37, which this Court granted on June 15, 2017. Dkt. No. 44.

Subsequent to this Court granting preliminary class certification, Class Member Heather Stanwix provided a declaration making clear that the practices complained of in Plaintiff's Complaint also occurred at other automotive dealerships owned and/or operated by Defendants.

Plaintiff now seeks preliminary class certification and court-ordered notice to all former and current employees of Defendants, at all automotive dealership locations operated by Defendants, who were subjected to the same policies and practices.

## **ARGUMENT**

**I.   DEFENDANTS' ILLEGAL WAGE AND HOUR PRACTICE VIOLATES THE FLSA.**

The FLSA requires that employers compensate their employees at a rate of one and one-half times their regular hourly rate for all hours worked in excess of forty per workweek. 29 U.S.C. § 207(a)(1). The employer must properly pay each employee for all time spent working, provided the employer knows, or has reason to believe, that the employee is working. 29 C.F.R. § 785.11. The FLSA contains certain exemptions to this requirement, including the one at issue in this case.

Defendants do not even deny that they failed to pay Plaintiff and Class Members one and one-half times their regular rate for overtime worked. Instead, they claim that they are not required to because of the Exemption, an argument this Court has already rejected. This Court has already found that Plaintiff made a sufficient showing to conditionally certify a class at the location at which he worked. Plaintiff now offers additional evidence, in the form of the Declaration of Heather Stanwix, that justifies expanding the class to include *all* similar employees of Defendants, regardless of the location at which they work. As with Plaintiff's initial motion, the only relevant question is whether he has properly alleged a harm and the class of individuals that suffered it. Plaintiff's prior successful showing, together with the Declaration of Heather Stanwix, easily surpasses this modest standard.

Therefore, notice of this lawsuit, and opportunity to join, must be sent to all potential Class Members.

## II. THE COURT'S ROLE IN NOTIFYING EMPLOYEES OF THEIR RIGHT TO OPT IN TO THIS LAWSUIT.

### A. The FLSA Requires Expedited Notice.

Congress, obviously wishing to enable employees to easily enforce their rights under the FLSA, created the "collective action" provision found in 29 U.S.C. § 216(b), which allows one or more employees to bring an action on behalf of all other employees, the only requirement being that those other employees must affirmatively join. Those who join are commonly referred to as opt-ins.

It is imperative that potential opt-ins be given notice, both of the action and, more important, of their right to join it. In addition to the crucial objective of making opt-ins aware of their rights, the collective action benefits the courts by resolving many identical individual claims in one action. See Braunstein v. Easter Photographic Lab., Inc., 600 F.2d 335 (2d Cir. 1978).

The Supreme Court has embraced the collective action, noting that it provides "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged … activity." Hoffman-LaRoche v. Sperling, 493 U.S. 165, 170 (1989). The Supreme Court also recognized that "[t]hese benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Id.

This Court has recognized the importance of notice to opt-ins *at an early stage*, even if it is later determined that certification is not appropriate. Rehwaldt v. Electronic Data Sys. Corp., 1996 U.S. DIST. LEXIS 22125 *8-9 (W.D.N.Y. March 28, 1996). Indeed, such is the remedial

nature of the FLSA, that notice is appropriate even "without regard to the substantive merit of the plaintiff's claims." Id. at *10.

Early notice protects the claims of those who were harmed. The statute of limitations under the FLSA is only two years, or three in cases of willful violation. As then-District Judge, now-Supreme Court Justice, Sotomayor has explained, "only by 'opting in' will the statute of limitations on potential plaintiffs' claims be tolled." Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 260 (S.D.N.Y. 1997). "Certainly, it is unlikely that Congress, having created a procedure for representative action, would have wanted to prevent the class representative from notifying other members of the class that they had a champion." Realite v. Ark Restaurants Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)(Sotomayor, J.)(internal citations omitted). While it may take some time for Plaintiff to prevail on the merits, it would not be fair for Defendants to benefit from that very time period. Only by opting in promptly, can opt-ins protect their claims and benefit from the success of this action.

   B.  Plaintiff Need Only Present "Modest" Allegations of Similarly Situated Employees.

The only issue at this stage is whether Plaintiff has "provide[d] some factual basis from which the court can determine if similarly situated plaintiffs exist." Id. at 261. Indeed, the likelihood of Plaintiff's success is not even relevant; "the Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of similarly situated plaintiffs can exist." Id.

Unlike the requirements for a class under Rule 23, class members must simply be "similarly situated." 29 U.S.C. §216(b). This is a far more lenient standard; the other Rule 23 factors - numerosity, typicality, etc. – do not apply. Scholtisek v. Eldre Corp., 229 F.R.D. 381, 386 (W.D.N.Y. 2005). This Court summarized Plaintiff's low burden in Scholtisek:

> In this early phase, courts employ a relatively lenient evidentiary standard in determining whether a collective action is appropriate. At the notice stage, courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination. To demonstrate that other potential plaintiffs are similarly situated to him, then, a plaintiff must make only a modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law. A plaintiff's burden at this stage is minimal, especially since the determination that potential plaintiffs are similarly situated is merely a preliminary one.

Id. at 387.

These modest standards are consistently applied throughout the Second Circuit, in which courts have repeatedly required only "substantial allegations," Jackson v. New York Tel. Co., 163 F.R.D. 429, 431 (S.D.N.Y. 1995), that plaintiffs "describe the potential class within reasonable limits," Schwed v. GE, 159 F.R.D. 373, 375-376 (N.D.N.Y. 1995), a "modest factual showing," Hoffman, 982 F. Supp. at 261, or a "factual nexus that supports a finding," Realite, 7 F. Supp. 2d at 306.

Such a low standard is entirely appropriate, given that the FLSA must be read broadly and liberally in order to achieve its remedial purpose. Braunstein, 600 F.2d at 335; Hoffman, 982 F. Supp. at 261. As discussed above, early notice protects the claims of potential opt-ins.

   C.  Notice is Appropriate at This Stage, Regardless of the Merits of the Claims.

This Court has observed that early notice is crucial, regardless of the merits, and even if certification is later found to be improper.

> *The inquiry at the inception of the lawsuit is less stringent than the ultimate determination that the class is properly constituted*. . . Even if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case. . . These benefits, however, depend on employees receiving accurate and timely notice.

Rehwaldt, 1996 U.S. DIST. LEXIS 22125, at *8-9 (emphasis in original)(citing Jackson v. New York Telephone Co., 163 F.R.D. 429,431-432 (S.D.N.Y. 1995). See also Realite, 7 F. Supp. 2d at 308 ("I am not holding at this time that all members of the proposed class who will be sent notices are, in fact, similarly situated to plaintiffs . . . should discovery reveal that plaintiffs in fact are not similarly situated . . . I may later decertify the class . . . However, at this early juncture . . . principles of efficiency and judicial economy militate in favor of maintaining this action as a collective one, and waiting to see what the facts bear out.")(Sotomayor, J.).

Thus, when making the decision to authorize notice, the court looks neither at the underlying merits nor at whether potential opt-ins will ultimately be found to be similarly situated. Rather, the decision is based solely on whether the plaintiff has met the low burden of "modest" allegations that others are similarly situated.

Similarly, potential opt-ins need not even hold the same positions, job titles, etc. as the named plaintiffs. "Class treatment under the [statute] is not defeated simply because, as here, the plaintiffs performed a variety of jobs in a number of departments at different locations." Heagney v. European American Bank, 122 F.R.D. 125, 127 (E.D.N.Y. 1988). "[A] finding of 'similarly situated' does not require the plaintiffs to perform the same job in the same location as long as there is a [violative] policy common to all. Abrams v. GE, 1996 U.S. DIST. LEXIS 16869 (N.D.N.Y Nov. 4, 1996).

   D.  <u>Plaintiff Has Met or Exceeded the Standard for Notice.</u>

There are normally two issues to be addressed: the proper scope of the class of similarly situated employees, and whether Plaintiff has presented evidence that he is similarly situated to that group. However, in this case, Plaintiff has already met this burden with respect to similar employees at the location at which he worked. The only question here is whether he has now

made a showing that justifies expanding the class to similar employees at Defendants' other locations.

In this case, the proper scope for notification is all current and former employees in Defendants' Parts Departments, from December 14, 2012 through the present. The evidence presented by Plaintiff easily meets or exceeds the required showing. He has identified the illegal policy of Defendants to which all potential class members were subjected: that employees were not paid at a rate of one and one-half times their regular rate for hours worked in excess of forty in one workweek. Declaration of Jeff Buehlman ("Dec. Buehlman") ¶¶3-4. He has also identified numerous other individuals with whom he frequently discussed this practice, and who were also subjected to it. Id. ¶6. This court has already accepted this showing as sufficient for employees at Defendants' Ide Honda location. The Declaration of Heather Stanwix now makes it clear that the very same policies were in place at Defendants' other locations.

For example, Ms. Stanwix worked at both the Honda and Mazda dealerships, though her pay was always issued by Ide Pontiac, Inc. Declaration of Heather Stanwix ("Dec. Stanwix") ¶¶2,7. In fact, she sometimes reported for work at one location and was sent to the other, depending on Defendants' business needs. Id. ¶2. She also frequently went back and forth between the Honda and Mazda dealerships to retrieve tires for the Honda dealership that were stored at the Mazda location. Id. ¶6. In addition, for part of her employment the physical location of her job was at the Honda location, but she handled wholesale automotive parts for the Mazda and Volkswagen dealerships as well, because that is how Defendants organized the business. Id. ¶4. Finally, it was common for others to work at various locations as well. John Pengen transferred from the Honda Parts Department to Volkswagen; Michael Maddalena moved from

9

Honda to Mazda; and Michael McCormack was the Mazda Parts Manager prior to becoming the Honda Parts Manager. Id. ¶6.

These specific examples show that Defendants operate their various locations as a single business, and that the practices complained of are applied at all locations.

Plaintiff's burden in this is case is especially low, because there is no denial that Defendants failed to pay overtime hours at one and one-half times employees' regular rates. Instead, the only real question in this case is whether the Exemption applies, and this Court has already decided that it does not. This eliminates all questions of whether Class Members were subjected to a common policy.

Such testimony makes it abundantly clear that Defendants' policy violates the FLSA, and that it was employed against a large group of employees. Accordingly, notice to all such employees is warranted.

 E. The Proposed Notice is Fair and Adequate and Needs to be Expedited.

As discussed, the rights of employees under the FLSA can only be protected by "employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Hoffman-LaRoche, 493 U.S. at 170. "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative." Id. at 172. Plaintiff's proposed notice meets each of these criteria. It provides notice of the pending action and the opportunity to opt-in. Declaration Robert Mullin ("Dec. Mullin") ¶11.

Plaintiff's proposed notice is modeled on the examples provided on the Federal Judicial Center's ("FJC") website, found at http://www.fjc.gov/public/home.nsf. Dec. Mullin ¶10. FJC example notices are recognized as the leading models for class action. see In re Indep. Energ

Holdings PLC Sec. Litig., 302 F. Supp. 2d (S.D.N.Y. 2003); Allstate Fin. Corp. v. Bristol Meyers Squibb Co., 1997 U.S. D<small>IST</small>. L<small>EXIS</small> 18358 (S.D.N.Y. Nov. 20, 1997); Grider v. Keystone Health Plan Cent., Inc., 2006 U.S. D<small>IST</small>. L<small>EXIS</small> 92260 (E.D. Pa. Dec. 20, 2006).

Plaintiff's proposed notice follows the FJC model closely. It quickly informs potential opt-ins about the case, how they are affected, how to join, the effects of joining or not joining, and of the prohibition against retaliation for participation. The notice is in plain English, and clearly notes that the Court expresses no opinion on the merits of the claims or Defendants' liabilities. Dec. Mullin ¶¶ 11-15.

Finally, the proposed notice is based on the form previously approved by this Court, with the only differences being related to expanding the definition of the class to include employees at other locations. Dec. Mullin ¶10.

Plaintiff proposes that the notice and consent forms be sent via first-class and electronic mail to all potential class members who worked for Defendants on and/or after December 14, 2012. Dec. Mullin ¶17. To facilitate this notice, Plaintiff asks the Court to order Defendants to provide Plaintiff's counsel with a list, in both hardcopy and EXCEL formats, with each item of the employee's name, current or last known address, phone number, social security number, identification number(s) assigned by Defendant(s), location of employment, position or capacity of employment, rates of pay, dates of employment, and email address, of all individuals who meet the class description, within 15 days of the issuance of the order. Dec. Mullin ¶18.

In addition, because the claims of potential opt-ins are dying daily, Plaintiff also asks that Defendants be ordered to post notices and opt-in forms in conspicuous places, such as break rooms, locker rooms, time clocks, or other areas of employee congregation, and at Defendants'

locations where employees can see such notices during the pendency of the lawsuit. This is also consistent with what this Court approved when granting Plaintiff's previous motion.

In addition to the court-approved notice, Plaintiff's counsel is permitted to send additional communication to potential opt-ins, provided it is accurate and not misleading. See Shapero v. Kentucky Bar Assoc., 486 U.S. 466 (1986); Gulf Oil Co. v. Bernard, 452 U.S. 89 (1981). Plaintiff's counsel may also initiate email and telephone contact with prospective opt-ins and witnesses, provided that they are not represented by counsel. These measures are important, and will be utilized. However, as the courts have repeatedly held, the best way to protect the rights of potential opt-ins is for this Court to approve the notice and order its expedited dissemination.

As shown above, Plaintiff has clearly shown the need for early notice. Each day without notice reduces or extinguishes the claims of an untold number of potential opt-ins. Therefore, expedited notice is not only appropriate, it is crucial.

**<u>CONCLUSION</u>**

    For the foregoing reasons, Plaintiff respectfully asks that this Court issue an Order:

1. Requiring the issuance of an expedited notice as set forth in Exhibit A to the Declaration of Robert Mullin to all current and former hourly employees of Defendants who worked in the Parts Departments at Defendants' automotive dealerships during the period commencing December 14, 2012 through the present;;

2. Requiring Defendants to provide Plaintiff's counsel with a list, in both hardcopy and EXCEL formats, with each item of the employee's name, current or last known address, phone number, email address, social security number, identification number(s) assigned by Defendants, location of employment, position or capacity of employment, rates of pay, and dates of employment, of all individuals who meet the above class description, within 15 days of the issuance of the order;

3. Requiring Defendants to post notices and opt-in forms in conspicuous places, such as break rooms, locker rooms, time clocks, or other areas of employee congregation, and at Defendants' locations where employees can see such notices during the pendency of the lawsuit;

4. Granting such other relief as this Court deems just and proper.

Dated: November 8, 2017

                                                /s/
                                          Robert L. Mullin
                                          Ferr & Mullin, P.C.
                                          Attorneys for Plaintiffs
                                          7635 Main St. Fishers
                                          P.O. Box 440
                                          Fishers, NY 14453
                                          telephone (585) 869-0210
                                          facsimile (585) 869-0223
                                          rlmullin@FerrMullinLaw.com