UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



___

JEFF BUEHLMAN, on behalf of himself and all others similarly situated,

    Plaintiff,

v.

IDE PONTIAC, INC. and ANNE IDE, individually,

    Defendants.

**DECISION AND ORDER**

6:15-cv-06745 EAW

___

# INTRODUCTION

Plaintiff Jeff Buehlman ("Plaintiff") commenced this action on December 14, 2015, against defendants Ide Pontiac, Inc. ("Ide"), and Anne Ide ("Anne Ide") (collectively "Defendants"), asserting causes of action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, ("FLSA") and the New York State Labor Law § 190 *et seq.* ("NYLL"). (Dkt. 1). Plaintiff seeks, on behalf of himself and all similarly situated individuals, unpaid overtime compensation from Defendants under Section 207(a)(1) of the FLSA, 29 U.S.C. § 207(a)(1). Plaintiff individually seeks unpaid overtime under New York law.[1]

Currently before the Court are two motions. Plaintiff seeks summary judgment in his favor and final certification of the matter as a collective action pursuant to 29 U.S.C.

___

[1] Plaintiff also asserted an individual claim for spread-of-hours compensation under the NYLL. The Court granted summary judgment to Defendants as to this claim on November 7, 2016. (Dkt. 25 at 23).

- 1 -

§ 216(b). (Dkt. 57). Defendants seek reconsideration of a prior order of the Court denying their motion for summary judgment and decertification of the collective action. (Dkt. 56). For the reasons set forth below, Defendants' motion for reconsideration and decertification is granted, and Plaintiff's motion for summary judgment and final certification is denied.

## BACKGROUND

The background of this case is set forth in detail in the Court's November 7, 2016 Decision and Order (Dkt. 25) (the "November 2016 Decision"), familiarity with which is assumed for purposes of this Decision and Order. The Court has summarized the key details below.

Plaintiff was employed by Ide from 2002 until August 19, 2015. (Dkt. 15-5 at ¶ 16; Dkt. 18-1 at ¶ 16). Plaintiff's job title was "partsman." (Dkt. 15-5 at ¶ 17; Dkt. 18-1 at ¶ 17). Plaintiff was paid the same hourly rate for each hour that he worked, including for hours in excess of forty. (Dkt. 15-5 at ¶ 19; Dkt. 18-1 at ¶ 19). Plaintiff's primary responsibility was requisitioning, stocking, and dispensing automotive parts in Ide's service center. (Dkt. 15-5 at ¶ 22; Dkt. 18-1 at ¶ 22). As a partsman at Ide, "approximately 70% of [Plaintiff's] job duties [was] ordering, stocking, organizing and dispensing parts for mechanics to use in the course of servicing vehicles at Ide." (Dkt. 15-5 at ¶ 26; Dkt. 18-1 at ¶ 26). Plaintiff claims that he also "unloaded trucks . . ., ran errands to other company locations, packed up and shipped return items to Honda, and sometimes even performed minor janitorial duties if asked." (Dkt. 18-2 at 1).

Plaintiff commenced the instant action on December 14, 2015. (Dkt. 1). Defendants filed their Answer on February 1, 2016. (Dkt. 6). On May 16, 2016, Defendants filed a

motion for summary judgment. (Dkt. 15). Plaintiff thereafter filed a cross-motion for summary judgment (Dkt. 18) and a motion to strike (Dkt. 21).

On November 7, 2016, United States District Judge Michael A. Telesca decided Defendants' motion for summary judgment, Plaintiff's cross-motion for summary judgment, and Plaintiff's motion to strike. (*See* Dkt. 25). Defendants' motion for summary judgment was denied in part and granted in part, and Plaintiff's cross-motion for summary judgment and motion to strike were denied. (*Id.* at 2). In denying Defendants' motion for summary judgment in part, the Court adopted the analysis in *McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 383 (E.D.N.Y. 2010), and determined as a matter of law that Plaintiff did not fall within the "partsman" statutory exemption (the "Exemption") for overtime compensation under the FLSA and the NYLL. (*Id.* at 5-14).[2] The Court granted summary judgment to Defendants with respect to Plaintiff's NYLL spread-of-hours claim. (*Id.* at 16-17).

On November 8, 2016, this case was transferred to the undersigned. (Dkt. 26). Thereafter, on December 7, 2016, Defendants filed a motion for certification of the November 2016 Decision for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). (Dkt.

---

[2] As explained in the November 2016 Decision, the Exemption excludes from the FLSA's overtime payment requirement "any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trucks, or farm implements, if he is employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers." 29 U.S.C. §213(b)(10)(A). The Exemption applies to Plaintiff's NYLL overtime claims by virtue of 12 N.Y.C.R.R. § 142-2.2, which provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 U.S.C. 201 *et seq.*, the Fair Labor Standards Act of 1938, as amended[.]"

27). Plaintiff then filed, on December 21, 2016, a motion for summary judgment. (Dkt. 29). On August 1, 2017, the Court entered a Decision and Order (Dkt. 47) (the "August 2017 Decision") denying both of these motions.

On May 4, 2017, Plaintiff filed a motion to preliminarily certify this matter as a collective action under 29 U.S.C. § 216(b) and for expedited notice to all similarly situated current and former employees of Defendants. (Dkt. 35). On June 15, 2017, United States Magistrate Judge Marian W. Payson entered an order granting conditional certification and approving notice to "all former and current employees who worked at Ide Honda in its Parts Department since December 14, 2012." (Dkt. 44 at 1-2). Plaintiff subsequently sought to expand the definition of the employees included in the conditionally certified collective action (Dkt. 49); Judge Payson denied this request without prejudice on December 11, 2017 (Dkt. 55).

Defendants' pending motion for reconsideration and to decertify the collective action and Plaintiffs' pending motion for summary judgment and final certification were both filed on May 23, 2018. (Dkt. 56; Dkt. 57). Opposition papers were filed on June 21, 2018 (Dkt. 59; Dkt. 60), and replies were filed on July 5, 2018 (Dkt. 62; Dkt. 63). Oral argument was held before the undersigned on December 5, 2018. (Dkt. 67). On December 10, 2018, Plaintiff filed a request for additional briefing (Dkt. 69), which Defendants opposed (Dkt. 68). The Court denied the request for additional briefing on December 13, 2018. (Dkt. 70).

## DISCUSSION

I. **Motion for Reconsideration**

A. **Legal Standard**

The Court first considers Defendants' request for reconsideration of the November 2016 Decision. Under Fed. R. Civ. P. 54(b), this Court has inherent power to reconsider its own decisions prior to the entry of a judgment adjudicating all the claims. *See* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision . . . that adjudicates fewer than all the claims . . . does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). However, the Second Circuit has "limited district courts' reconsideration of earlier decisions under Rule 54(b) by treating those decisions as law of the case." *Official Comm. of Unsecured Creditors of the Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003). Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). The doctrine of law of the case is discretionary and "merely expresses the practice of the courts generally to refuse to reopen what has been decided." *Devilla v. Schriver*, 245 F.3d 192, 197 (2d Cir. 2001) (internal quotations omitted). In particular, the Court remains free to revisit its earlier determinations in cases of "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Doe v. N.Y.C. Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983) (internal quotation omitted).

## B. Reconsideration of the November 2016 Decision is Warranted

Defendants seek reconsideration of that portion of the November 2016 Decision denying their motion for summary judgment as to Plaintiff's claims for unpaid overtime compensation, arguing that the Supreme Court's recent decision in *Encino Motorcars, LLC v. Navarro*, ___ U.S. ___, 138 S. Ct. 1134 (2018) represents an intervening change in controlling law that undermines the Court's earlier determination. For the reasons set forth below, the Court agrees.

With respect to Plaintiff's overtime claims, the November 2016 Decision considered the dispositive issue of whether Plaintiff's employment with Defendants fell within the scope of the Exemption. *Encino Motorcars* directly conflicts with the analysis set forth in the November 2016 Decision (and reiterated in the August 2017 Decision) as to this issue.

In *Encino Motorcars*, the Supreme Court considered whether the Exemption "applies to service advisors—employees at car dealerships who consult with customers about their servicing needs and sell them servicing solutions," and concluded that it did. 138 S.Ct. at 1138. In reaching this conclusion, the *Encino Motorcars* Court made two findings that are relevant to the instant matter, and contrary to the November 2016 Decision. First, the Court rejected the long-standing rule that exemptions to the FLSA are to be construed narrowly. *Id.* at 1142 (rejecting "the principle that exemptions to the FLSA should be construed narrowly . . . as a useful guidepost for interpreting the FLSA"); *see also Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 228 (2d Cir. 2018) ("Until recently, it was a rule of statutory interpretation that a court should narrowly construe an exemption to the FLSA in order to effectuate the statute's remedial purpose. But that is not the rule

anymore. The Supreme Court has now reject[ed] this principle as a useful guidepost for interpreting the FLSA.") (quotations and citations omitted and alteration in original). Second, the Court interpreted the word "servicing" as used in the Exemption and concluded that it was not limited to individuals who spend their time "physically repairing automobiles," but also encompassed those "who do not physically repair automobiles themselves but who are integrally involved in the servicing process." *Encino Motorcars*, 138 S. Ct. at 1140-41. The Court particularly identified "partsmen" who "obtain the vehicle parts . . . and provide those parts to the mechanics" as an example of individuals who are integrally involved in the servicing process without personally performing vehicle repairs. *Id.* (quotation omitted).

*Encino Motorcars* is in direct conflict with the November 2016 Decision, which found as a matter of law that the term "servicing," as used in the Exemption, did not include "being involved in or integral to the service process," and that Plaintiff did not fall within the purview of the Exemption because he "did not actually work on vehicles." (Dkt. 25 at 10-11 (quotations omitted); *see also* Dkt. 47 at 9 (describing the November 2016 Decision as having found that "a partsman must have actually worked on vehicles in order to fall within the purview of the Exemption") (quotation omitted)). Moreover, because *Encino Motorcars* is a decision of the Supreme Court, this Court is bound by it. *Encino Motorcars* therefore represents an intervening change in the controlling law and warrants reconsideration of the November 2016 Decision.

## C. Defendants are Entitled to Summary Judgment on Plaintiff's Unpaid Overtime Claims

*Encino Motorcars* necessitates revisiting the Court's prior finding that Plaintiff's work for Defendants was not subject to the Exemption. On reconsideration, the Court finds that, applying the definition of "servicing" established in *Encino Motorcars*, Defendants have demonstrated that Plaintiff's work was within the scope of the Exemption and he was therefore not entitled to the payment of overtime compensation.

As the Court explained in the November 2016 Decision, the Exemption "has three requirements": (1) an individual must fall within the regulatory definition of partsman; (2) an individual must have been primarily engaged in selling or servicing vehicles; and (3) the individual must have been employed by a nonmanufacturing establishment primarily engaged in the business of selling vehicles. (Dkt. 25 at 5-14). Turning to the first of these requirements, the Court previously found that the parties "agree that Plaintiff was a 'partsman' as defined in 29 C.F.R. § 779.372(c)(2)."[3] (*Id.* at 6). The Court finds no reason to revisit that determination.

The next requirement—that Plaintiff must have been primarily engaged in selling or servicing vehicles—is where the Court previously found in favor of Plaintiff. In particular, and as previously discussed, the Court found that Plaintiff was not primarily engaged in servicing vehicles because, while his work was "integral to the service process," he "did not actually work on vehicles." (Dkt. 25 at 10-11) (quotations omitted). *Encino*

---

[3] 29 C.F.R. § 779.372(c)(2) defines a "partsman" as "any employee employed for the purpose of and primarily engaged in requisitioning, stocking, and dispensing parts."

- 8 -

*Motorcars* now compels a contrary conclusion. As set forth above, *Encino Motorcars* makes clear that work that is "integral to the service process" falls within the definition of "servicing" as that term is used in the Exemption. Moreover, *Encino Motorcars* specifically identifies a partsman who "obtain[s] the vehicle parts . . . and provide[s] those parts to the mechanics" as an individual who is "integrally involved in the servicing process." 138 S. Ct. at 1140-41.

In connection with Defendants' motion for summary judgment, Plaintiff admitted that, as a partsman at Ide, approximately 70% of his job duties consisted of "ordering, stocking, organizing and dispensing parts for mechanics to use in the course of servicing vehicles at Ide." (Dkt. 15-5 at ¶ 26; Dkt. 18-1 at ¶ 26). On these facts, and applying the definition of "servicing" set forth in *Encino Motorcars*, a reasonable jury would be compelled to conclude that, while employed by Defendants, Plaintiff was primarily engaged in servicing vehicles.[4]

Finally, with respect to the requirement that Plaintiff be employed by a nonmanufacturing establishment primarily engaged in the business of selling vehicles, the applicable regulations provide that, "[a]s applied to the establishment, primarily engaged means that over half of the establishment[']s annual dollar volume of sales made or business done must come from sales of the enumerated vehicles." 29 C.F.R. § 779.372(d). Defendants have demonstrated that Ide meets this definition. In connection with their

---

[4] As set forth in the November 2016 Decision, "primarily engaged" in this context is defined as "the major part or over 50 percent of the . . . partsman's time" having been spent "selling or servicing vehicles." (Dkt. 25 at 7 (quoting 29 C.F.R. § 779.372(d)).

motion for summary judgment, Defendants submitted a declaration, made under penalty of perjury, from defendant Anne Ide, Ide's Corporate Secretary, stating that between 2010 and 2015 (the years at issue in the instant matter),[5] "at least 80% of Ide's annual dollar volume of sales made or business done came from sales of vehicles." (Dkt. 20-1 at ¶ 3). Although Plaintiff argued at the time that additional documentary evidence was required to support these representations, Plaintiff's counsel conceded at oral argument that Plaintiff was no longer contesting that Ide satisfied the relevant statutory requirements with respect to the source of its sales. Indeed, a declaration by an individual with personal knowledge is sufficient to support a motion for summary judgment. *See, e.g., Williams v. City of New Haven*, No. 3:10CV1164 DJS, 2014 WL 1246551, at *4 (D. Conn. Mar. 21, 2014) (declining to strike affidavit submitted in support of motion for summary judgment on the basis that it was "absent of evidentiary support" where it was based on the affiant's "own personal knowledge") (quotations omitted); *see also* Fed. R. Civ. P. 56(c)(4) (an affidavit or declaration may be used to support a motion for summary judgment so long as it is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated"). Anne Ide's declaration is sufficient to establish that, for purposes of the Exemption, Ide is a nonmanufacturing establishment primarily engaged in the business of selling vehicles.

---

[5] The statute of limitations for actions under the FLSA is "generally two years, but extends to three years for willful violations," *Pest v. Bridal Works of New York, Inc.*, 268 F. Supp. 3d 413, 431 (E.D.N.Y. 2017), while the statute of limitations for NYLL claims is six years, *see Perkins v. 199 SEIU United Healthcare Workers E.*, 73 F. Supp. 3d 278, 291 (S.D.N.Y. 2014).

For the foregoing reasons, under the standards set forth in *Encino Motorcars*, Defendants have demonstrated as a matter of law that, during his employment at Ide, Plaintiff was a partsman primarily engaged in servicing automobiles while employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles to ultimate purchasers. Accordingly, Plaintiff was exempt from the overtime payment requirements of both the FLSA and the NYLL, and Defendants are entitled to summary judgment as to his claims for unpaid overtime.

The Court's conclusion that Defendants are entitled to summary judgment in their favor on Plaintiff's claims for unpaid overtime also necessarily means that Plaintiff's motion for summary judgment as to those claims must be denied. Plaintiff's motion is premised entirely on the Court's prior determination that Plaintiff was not subject to the Exemption because his work did not involve servicing automobiles. Because the Court has, for the reasons discussed at length above, reconsidered and reversed that determination based on *Encino Motorcars*, Plaintiff cannot demonstrate that he is entitled to summary judgment in his favor.[6]

---

[6] Despite the fact that his Complaint makes no reference whatsoever to not having been provided notice under NYLL § 195, in his motion for summary judgment, Plaintiff argued that he was entitled to summary judgment on his "NYLL Notice Claim" based on § 195. (*See* Dkt. 57-1 at 17-18). In opposition, Defendants pointed out that the § 195 obligation to provide written notice of employees' pay rates at the time of hire was enacted in 2009, when Plaintiff had been working for Ide for many years, and therefore did not apply to Plaintiff. (Dkt. 60-2 at 10-11). In reply, Plaintiff conceded that "he was hired prior to the NYLL requirement of providing certain notices at the time of hire" and "acquiesce[d] to the dismissal of his claim for failure to provide notice at the time of hire as required by NYLL § 195." (Dkt. 62 at 11). As such, to the extent the Complaint in this matter can be read as asserting a claim under NYLL §195 (which the Court does not believe

## II. Defendants' Motion for Decertification and Plaintiffs' Motion for Final Certification

### A. Legal Standard

In addition to seeking reconsideration of the November 2016 Decision, Defendants also ask the Court to decertify this matter as a collective action. (*See* Dkt. 56). Plaintiff seeks final certification of the matter as a collective action. (*See* Dkt. 57).

"Section 216(b) of the FLSA authorizes collective actions to recover damages for unpaid wages where all employees are 'similarly situated.'" *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 297 (S.D.N.Y. 2015) (quoting 29 U.S.C. § 216(b)). "Although they are not required to do so by FLSA, district courts have discretion, in appropriate cases, to implement [§ 216(b) of the FLSA] . . . by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quotation omitted). This is often referred to as certification, although as the Second Circuit observed in *Myers*, it is not "certification" in the traditional class action sense and "nothing in the text of the statute prevents plaintiffs from opting in to the action by filing consents with the district court, even when the notice . . . has not been sent, so long as such plaintiffs are 'similarly situated' to the named individual plaintiff who brought the action." *Id.* at 554 n.10.

District courts in this circuit apply a two-step method for determining whether to exercise their discretion under § 216(b):

---

it does), Plaintiff is not entitled to summary judgment on any such claim, and the claim is dismissed.

The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to whether a FLSA violation has occurred. The court may send this notice after plaintiffs make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law. At the second stage, the district court will, on a fuller record, determine whether a so-called "collective action" may go forward by determining whether the plaintiffs who have opted in are in fact "similarly situated" to the named plaintiffs. The action may be "de-certified" if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice.

*Id.* at 555 (internal citations and quotations omitted). The first of these steps is typically referred to as "conditional certification." *See Ruiz*, 93 F. Supp. 3d at 297. "At the second step, typically the defendant moves for decertification, and the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id.* In making this determination, the Court considers various factors, including "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against collective action treatment[.]" *Scott v. Chipotle Mexican Grill, Inc.*, No. 12-CV-8333 (ALC)(SN), 2017 WL 1287512, at *8 (S.D.N.Y. Mar. 29, 2017) (quotation omitted).

## B.  Decertification is Appropriate in this Case

In this case, considering the factors identified above, the Court finds that decertification is warranted. Other than Plaintiff, two individuals have opted into this action—Heather Stanwix and Jonathan Pensgen (collectively the "Opt-In Plaintiffs").

(*See* Dkt. 46; Dkt. 48). Ms. Stanwix and Mr. Pensgen each submitted brief declarations to the Court stating that they were employed in the parts departments of various Ide automotive dealerships and that their duties consisted "primarily of selling automotive parts directly to members of the public[.]" (Dkt. 49-4 at ¶¶ 2-3 (Ms. Stanwix); Dkt. 53-2 at ¶¶ 1-2 (Mr. Pensgen)). Apart from these brief declarations, the record contains no information regarding the work performed by the Opt-In Plaintiffs, or regarding the percentages of their time spent on various job duties.

Based on the record before the Court, it appears that Plaintiff's employment setting and the Opt-In Plaintiffs' employment settings varied in material ways. In particular, the Court notes that Plaintiff and the Opt-In Plaintiffs, at various times, worked for different automotive dealerships. *See Scott*, 2017 WL 1287512 at *9 (finding decertification appropriate where opt-in plaintiffs worked in different locations with different managers). Moreover, because the applicability of the Exemption hinges on the proportion of time an employee spent servicing automobiles, the Court agrees with Defendants that "whether each of the [Opt-In Plaintiffs] qualify for the [Exemption] will require an individual, fact-specific analysis." (Dkt. 56-2 at 12). Under these circumstances, decertification is warranted. *See, e.g., Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 467 (S.D.N.Y. 2011) (granting decertification motion where "the defenses available to" the defendant were "individual to each plaintiff").

Having determined that decertification is appropriate, the Court will dismiss the claims of the Opt-In Plaintiffs without prejudice. *See Ruiz*, 93 F. Supp. 3d at 300 (where a collective action is decertified, and the case cannot appropriately be divided into

subgroups, the proper course is to dismiss the claims of the opt-in plaintiffs without prejudice); *see also Scott*, 2017 WL 1287512 at *9 (dismissing claims of opt-in plaintiffs without prejudice as a result of decertification). "[A]ny opt-in plaintiff who wishes to file a new, standalone action may of course do so. The Court assumes that plaintiffs would designate such a case 'related' to the instant action and would accept it as such." *Morano v. Intercontinental Capital Grp., Inc.*, No. 10 CV 02192 KBF, 2012 WL 2952893, at *9 (S.D.N.Y. July 17, 2012).

With respect to the statute of limitations for any such potential standalone action, "[i]n collective actions, the statute of limitations resumes after a court's determination to decertify a class." *McEarchen v. Urban Outfitters, Inc.*, No. 13CV3569RRMJO, 2017 WL 3912345, at *2 (E.D.N.Y. Sept. 6, 2017). However, "[i]n order to avoid prejudice to opt-in plaintiffs, courts may toll the statute of limitations in FLSA collective actions that have been decertified, and they often do so in cases involving many opt-in plaintiffs." *Id.* (collecting cases). In this case, given the small number of opt-in plaintiffs and the fact that this is not a particularly complex matter, the Court finds that a 30-day tolling period is appropriate. *Cf. id.* (tolling for 60 days where there were 165 opt-in plaintiffs and the matter was particularly complex); *Scott v. Chipotle Mexican Grill, Inc.*, No. 12-CV-8333 (ALC)(SN), 2017 WL 1434498, at *1 (S.D.N.Y. Apr. 19, 2017) (granting 90-day tolling period in case involving 516 opt-in plaintiffs spread across 37 states). As such, the Court tolls the applicable statute of limitations as to the Opt-In Plaintiffs' FLSA overtime claims for 30 days from entry of this Decision and Order.

## CONCLUSION

For the foregoing reasons, Defendants' motion for reconsideration and decertification of the matter as a collective action (Dkt. 56) is granted. Plaintiff's motion for summary judgment and final certification (Dkt. 57) is denied. The Opt-In Plaintiffs' claims are dismissed without prejudice, and the statute of limitations as to those claims is tolled for 30 days from entry of this Decision and Order. Defendants are granted summary judgment as to Plaintiff's unpaid overtime claims under both the FLSA and the NYLL. The Clerk of Court is instructed to enter judgment in favor of Defendants and to close the case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: December 17, 2018
Rochester, New York